IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jeffrey William Crouchman, | ) CIVIL ACTION NO. 9:16-1762-CMC-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Southern Health Partners, Sheriff Rick Clark, Dr. Sellman, Nurse Denise Pipes, Nurse NFN Lori and NFN Bree, | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. 1983. Plaintiff alleges that the named Defendants violated his constitutional rights when they denied him mental health treatment and access to a grievance procedure while he was detained at the Pickens County Detention Center.[1]

All of the Defendants except for the Defendant Clark filed responsive pleadings, and after the conclusion of the discovery period the Court entered an Order on November 15, 2016 providing twenty (20) days for the parties to file dispositive motions, if any. In the event no party filed a dispositive motion, the file was to be forwarded to the United States District Judge for trial. See Order (Court Docket No. 21). Thereafter, Plaintiff filed a request for entry of default as to the remaining Defendant Rick Clark (Sheriff of Pickens County), and the Clerk entered a default as to this Defendant pursuant to Rule 55(a), Fed.R.Civ.P. on November 28, 2016. The following day, Defendant Clark filed a motion to be relieved of default pursuant to Rule 55(c). Defendant Clark also

---

[1] Plaintiff is no longer incarcerated. See Court Docket No. 20 [Change of Address Notice].



filed a motion to dismiss for lack of jurisdiction and for failure to state a claim on December 6, 2016, while the remaining Defendants have all filed motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P.. Roseboro orders were then issued by the Court, advising Plaintiff of the importance of the Defendants' dispositive motions and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to file adequate responses to the Defendants' dispositive motions, they could be granted, thereby ending his case.

Plaintiff filed a response in opposition to the Defendant Clark's motion to set aside default on December 27, 2016, to which Clark filed a reply memorandum on January 3, 2017. Plaintiff failed to timely file any response(s) to the Defendants' motions to dismiss or for summary judgment. However, on January 11, 2017 Plaintiff requested an extension of time to respond, and in an Order filed that same day, Plaintiff was granted until January 27, 2107 to file a response to Defendants' pending motions. Notwithstanding this extension and the specific warnings and instructions as set forth in the Court's Roseboro Order, however, Plaintiff failed to ever file a response to the Defendants' dispositive motions.

These motions are now before the Court for disposition.

**Motions Relating to Default**

As Plaintiff is proceeding in this case pro se and IFP, a serve order was entered by the Court directing the United States Marshal to attend service of process in this case using the Form USM-285 service addresses as supplied by the Plaintiff. See Order (Court Docket No. 8). See also Court Docket Nos. 3 and 10. The service address provided by Plaintiff for the Defendant Clark was: "Sheriff Rick Clark Pickens County Sheriff's Dept. 216 c. David Stone Rd. Pickens SC 29671". Thereafter, an executed process receipt and return was filed with the Court on August 1, 2016



showing service on the Defendant Rick Clark by certified mail on July 22, 2016, service being accepted and signed for by "Lt. Kristi Leopard". <u>See</u> <u>Exhibit</u> (Court Docket No. 14, p. 3).

Pursuant to the service receipt filed with the Court, the Defendant Clark's responsive pleading was docketed as being due by August 12, 2016. No responsive pleading was filed, and on November 28, 2016 Plaintiff filed an affidavit of default, with the Defendant Clark's default thereafter being entered by the Clerk. <u>See</u> Court Docket Nos. 23, 24; <u>see also</u> Rule 55(a), Fed.R.Civ.P. Plaintiff also that same date filed a separate motion for entry of a default judgment against the Defendant Clark pursuant to Rule 55(b), Fed.R.Civ.P.

The following day, the Defendant Clark Filed a motion to be relieved of default. Attached to the Defendant's motion was an affidavit from Kristi Leopard in which she attests that she is a Lieutenant at the Pickens County Detention Center, that in this position she reports directly to Captain Nix (the Captain over the judicial services division), and that she is not the Chief Executive Officer for the Sheriff or the Sheriff's Department, nor is she the Clerk for either such entity. Leopard has attached a copy of the Sheriff Department Organizational Chart to her affidavit as an exhibit, showing that she is a subordinate to the Captain of the Judicial Services Division, who is in turn a subordinate to the Chief Deputy, who is in turn a subordinate to the Sheriff (the Defendant Clark). <u>See</u> <u>generally</u>, <u>Leopard Affidavit</u>, with attached Exhibit. Defendant Clark argues in his motion to be relieved of default that he was not personally served with process in this case,[2] while defense counsel states in her filing that she only received notice of this suit on November 28, 2016, when counsel for another Defendant, Southern Health Partners, advised her that she (counsel for Southern Health Partners) had received notice of the entry of default. Counsel then, later that day,

---

[2]<u>See</u> Court Docket No. 14, p. 3 [showing service on Lt. Kristi Leopard].



3

received by mail from the Plaintiff a copy of his motion for default judgment.

Defendant Clark's counsel states in her filing that this was the first contact Plaintiff had had with Defendant's counsel, even though Plaintiff was well aware that she represents Pickens County and its employees, since this is the fourth lawsuit that he has brought against Pickens County or its employees. Defendant Rick Clark therefore argues that his default in this matter should be set aside pursuant to Rule 55(c) because Sheriff's are state officials, that the Federal Rules of Service require a party to serve a state governmental entity pursuant to the state rules, and that the South Carolina Rules of Civil Procedure require that a state official must be served "by delivering a copy of the summons and complaint to such officer or agency and by sending a copy of the summons and complaint by registered or certified mail to the Attorney General at Columbia". See S.C.R.C.P. Rule 4(d)(5); see also Rule 4(j)(2), Fed.R.Civ.P. Defendant Clark argues that since the Plaintiff did not serve the Complaint on him individually or on him as chief executive officer of the Sheriff's Department, nor was the attorney general served as required by the South Carolina Rules of Civil Procedure, that Plaintiff failed to effectuate valid service and his default should be set aside. Cf. Shaw v. Beaufort County Sheriff's Office, No. 05-3253, 2007 WL 2903940, at * 24 (D.S.C. Oct. 1, 2007).

When an entry of default has been made pursuant to Rule 55, the Court may set aside the entry of default for good cause. Rule 55(c) Fed.R.Civ.P.; Federal Deposit Insurance Corporation v. Danzig, 93-1294, 1993 WL 478842 at * 5 (4th Cir. Nov. 22, 1993). This "good cause" standard is liberally construed "in order to provide relief from the onerous consequences of defaults . . . ." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969)["Any doubts about whether relief should be granted should be resolved



4

in favor of setting aside the default so that the case may be heard on the merits"]. Considered under this standard, and after careful review and consideration of the arguments and evidence submitted, the undersigned finds and concludes that the Defendant Sheriff Rick Clark should be granted relief from default in this case.

"When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice of the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne el rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-205 (4th Cir. 2006). Here, Plaintiff argues in his brief that default should not be set aside because Lieutenant Leopard has accepted service in other cases he has filed, and in which the Defendants thereafter filed responsive pleadings and the cases proceeded. However, that is not the issue presented. There is no indication in any filings with the Court that if defense counsel had been notified of the service of the summons and complaint on Lieutenant Leopard, that counsel would not have accepted that service and the case would have thereupon proceeded from that point. Indeed, defense counsel states in her reply brief that, in the event the default is lifted, counsel agrees to accept service of the summons and complaint on behalf of the Defendant Clark. Rather, the questions presented are 1) whether service on the Defendant Clark by certified mail signed for by Lieutenant Leopard was proper, and 2) whether, if so, Clark is otherwise entitled to have his default set aside based on the factors set forth in Brake.

Upon consideration of these two questions, the undersigned initially concludes that Plaintiff failed to effectuate valid service on Clark as provided by Rule. See S.C.R.C.P. Rule 4(d)(5); Rule 4(j)(2), Fed.R.Civ.P.; see also Shaw, 2007 WL 2903940, at * 24. Additionally, Plaintiff has

5



made no showing that this Defendant did not act with reasonable promptness once his attorney was notified of the pendency of this case, that he was personally responsible for the default in this case, that there is otherwise any history of dilatory action on this Defendant's part in this case, or that Plaintiff will be prejudiced by allowing Clark to answer and defend. Brake, 439 F.3d at 204-205; see also Palmetto Federal Savings Bank of S.C. v. Industrial Valley Title Ins. Co., 756 F.Supp. 925, 931-932 (D.S.C. 1991)[Under Rule 55(c), it is not absolutely necessary that the neglect or oversight offered as a reason for a delay in filing a responsive pleading be excusable], vacated on other grounds, 1991 WL 832830 (D.S.C. May 15, 1991); Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988)[Noting that it is proper to focus on the source of the default, and that when the party being held in default is blameless the default should ordinarily be set aside]; Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 419 (4th Cir. 2010) [Prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits].

Therefore, it is recommended that the Defendant Rick Clark's motion to set aside default (Court Docket No. 27) be **granted**, and that Plaintiff's motion for entry of a default judgment as to the Defendant Clark (Court Docket No. 25) be **denied**. Lolatchy, 816 F.2d at 954 [Motion to set aside default should be liberally construed in order to provide relief from the consequences of a default]; United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982)["[T]he clear policy of the Rules is to encourage disposition of claims on their merits"].

**Motions to Dismiss and/or for Summary Judgment**

Turning then to the merits of Plaintiff's claims, Plaintiff alleges in his verified Complaint that while he was being held as a pre-trial detainee at the Pickens County Detention



Center, his constitutional rights were violated when he was denied mental health treatment and access to the jail grievance procedure. Specifically, Plaintiff alleges that when he was booked into the Pickens County Detention Center on November 12, 2015, he informed "Sgt. Underwood" of his "same mental health condition and diagnosis as in past visits to the jail", and that when he was subsequently seen by medical staff (the Defendant Nurse Lori) he reminded her of his mental health condition, as he also did the Defendant Dr. Sellman when he saw him a few weeks later. Plaintiff alleges that he thereafter made repeated attempts to "see mental health" but was told both by the Defendant Lori as well as the Defendant Nurse Denise Pipes that he would be put on a waiting list to see the Defendant Bree with Pickens Mental Health, but that he was "supposedly" not put on that list until the second week of December. Plaintiff further alleges that over the next two months he saw the Defendant Sellman and Pipes almost every week, during which he kept reminding them both of his mental health diagnosis and past history and treatment as well as that he was taking mental health medications up until coming to the jail, and including showing the doctor mental health records of his treatment, but that every time Sellman and Pipes just kept telling him that he was on the "list". However, Plaintiff alleges that the Defendant Bree from Pickens Mental Health "kept skipping Plaintiff and would not see him". Plaintiff alleges that this went on for three months.

      Plaintiff alleges that on one occasion during the first week of March 2016, he was taken to sick call by "Officer Tammy". Plaintiff alleges that the Defendant Lori was at her desk talking to the Defendant Bree on a speaker phone, and that Bree was asking Lori who was next, who was urgent, or who she needed to see. Plaintiff alleges that he spoke up but that the Defendant Lori said nothing about Plaintiff needing to see her (Bree). Plaintiff alleges that after the phone call ended, he expressed his concern and outrage at Lori for not mentioning his name, but that Lori simply told



him that he was "on the list". Plaintiff alleges that the Defendants' failure to act and obtain treatment for him for his mental health needs constituted deliberate indifference to his health and safety in violation of his constitutional rights, and caused him to suffer "serious physical and emotional injuries". Plaintiff further claims that the Defendants denied him an opportunity to utilize the grievance process by ignoring his grievance requests. Plaintiff seeks monetary damages. See generally, Plaintiff's Verified Complaint.

As attachments to his Complaint, Plaintiff has submitted an affidavit and a copy of a mental health center discharge document. In his affidavit, Plaintiff attests that during his initial screening the Defendant Lori acknowledged both his medical issues and mental health issues, but that it was not until three weeks later, after he inquired as to why it was taking so long for him to see a mental health professional, that he was told by Dr. Sellman that Plaintiff would have to speak to Nurse Pipes. Plaintiff attests that he was then told by Nurse Pipes that she would put him "on the list", and that when he questioned why he was not already on the list, Pipes explained that all mental health referrals were given to a woman named Bree from Pickens Mental Health. Plaintiff attests that Bree came to the jail many times over the next three months, but that she never saw him. Finally, Plaintiff attests that when he asked to write a grievance on the issue, he was ignored and told to write Pickens Mental Health. Plaintiff attests that he thereafter left the jail on March 23, 2016.

The attached mental health center discharge summary document is from Anderson-Oconee-Pickens Mental Health Center, and notes a date of admission of November 30, 2011 and a date of discharge of June 4, 2012. This document further indicates that Plaintiff had a diagnosis at admission of a mood disorder, not otherwise specified, with a diagnosis at discharge of bipolar disorder, not otherwise specified, and post traumatic stress disorder. This document also indicates



that Plaintiff was stable at his last contact, but that no progress had been made on treatment goals during individual therapy due to non-compliance. See, attachments to Plaintiff's Complaint.

The Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). However, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Further, summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. While the moving party has the burden of proving that judgment on the pleadings is appropriate; Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991); once the moving party makes this showing, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Here, after careful review of the evidence and arguments provided, the undersigned concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

First, the undersigned agrees with the Defendants that the medical claim asserted by the Plaintiff in this lawsuit is encompassed by the claims asserted by Plaintiff in a previous lawsuit against many of these same Defendants. See Crouchman v. Southern Health Partners, et al., Civil Action No. 16-426. See also Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296



(5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records]. Summary judgment against the Plaintiff was entered in that case on September 22, 2016, and the doctrine of res judicata precludes not only the re-litigation of issues that were actually decided in that case, but also any issues that could have been presented for determination in that case. Watkins v. M & M Tank Lines, Inc., 694 F.2d 309, 311 (4th Circuit 1982). Plaintiff has not offered any evidence, or even any argument, to dispute Defendants' contention that his medical claim is barred by res judicata due to his already having litigated this claim in a previous lawsuit.[3]  Therefore, this claim should be dismissed on that basis.

Additionally, even if this Court were to reach and evaluate Plaintiff's claims on the merits, the Defendant Sellman (a licensed physician and formerly the Medical Director at the Pickens County Detention Center) has submitted an affidavit in which he outlines the substantial medical care and treatment provided to the Plaintiff during his multiple detentions at the Detention Center, including the period at issue in this lawsuit, and attesting that although Plaintiff regularly submitted sick call requests seeking medical care, these requests were primarily for cardiovascular issues and various infections, and that Plaintiff never submitted any sick call requests seeking care for a mental health issue or expressing that he was experiencing emergent or serious mental health problems. Dr. Sellman attests that the only time Plaintiff requested to be seen by the behavioral/mental health counselor who periodically visited the jail was on one occasion, December 21, 2015, when Plaintiff complained to him that he was having anxiety, and that as a result of this request he referred Plaintiff to the behavioral/mental health counselor. Dr. Sellman further attests that the behavioral/mental

---

[3] While Plaintiff added Defendants Clark, NFN Lori, and NFN Bree, the "privies" element of res judicata is satisfied due to connections between these Defendants. See Saleno v. Corzine, 449 Fed.Appx. 118, 122-123 (3d Cir. Oct. 26, 2011)



health counselor (apparently the Defendant Bree from Pickens Mental Health) visited the Detention Center on a limited basis each week, with available appointments being prioritized by severity of need.  As such, detainees in crisis or displaying emergent or severe mental health conditions (such as suicidal, psychotic or schizophrenic episodes) were given priority, with any other inmate requesting to be seen by the mental health provider being seen as time permitted.  If time did not permit a session with the counselor on a particular visit, then the detainee would nevertheless remain on the list until such time as the detainee could be seen.

Sellman attests that in his examinations of the Plaintiff he saw no signs, symptoms or medical indications of distress, crisis, or of an emergent mental health issue, all findings consistent with the fact that Plaintiff was not himself submitting any sick call requests indicating such. Therefore, although Plaintiff was placed on the list for a mental health appointment per his request, his request was not designated as crisis or emergent so as to be placed at the top of the list, and that as a result he was released in March before an appointment time became available for him.  Even so, Dr. Sellman attests that up to the time of Plaintiff's release he (Dr. Sellman) continued to see him, monitor his medical conditions, and prescribe medications that he determined were medically necessary and appropriate based on Plaintiff's history, presentation and symptomology. Dr. Sellman attests that the medications prescribed for the Plaintiff included Vistaril to address his complaint of anxiety.[4]  In sum, Dr. Sellman attests that he, Nurse Lori and Nurse Denise (Pipes) addressed Plaintiff's numerous medical issues, that Plaintiff was provided with medical care that in his judgment was necessary and appropriate, and that no one was ever deliberately indifferent to any

---

[4] Dr. Sellman further notes that the mental health counselor, even if she had been able to see the Plaintiff, could not prescribe medications.



medical need that Plaintiff expressed he was having. As further support for the statements in Dr. Sellman's affidavit, the Defendants have also provided a copy of Plaintiff's medical records, which total 145 pages and show that Plaintiff was seen on a regular basis by medical personnel while he was at the jail.

As noted, other than the general and conclusory statements contained in Plaintiff's verified complaint and in the medical document attached to his complaint (which references medical treatment Plaintiff received some three years prior to the time period encompassed by Plaintiff's allegations), Plaintiff has submitted no evidence whatsoever to support his claims that any named Defendant was deliberately indifferent to his serious medical needs.[5] Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837. Indeed, Plaintiff has not responded to the Defendants' arguments and evidence whatsoever.[6] House v. New Castle County, 824 F.Supp. 477, 485 (D.Md.

---

[5] As a pretrial detainee during the time period set forth in the Complaint, Plaintiff's claim is evaluated under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Even so, the underlying standard of whether Plaintiff received constitutionally adequate medical care is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the 14th Amendment guarantees at least 8th Amendment protections]. Under this standard, in order to proceed with his claim for denial of adequate medical care, Plaintiff must have evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).

[6] Verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Therefore, even though
(continued...)



1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).

Therefore, the Defendants are entitled to summary judgment on Plaintiff's medical claim. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; cf. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002); Graham v Stansberry, No. 07-3015, 2008 WL 3910689 at * 8 n. 6 (E.D.N.C. Aug. 20, 2008) [Finding that "[e]ven if Plaintiff had alleged a claim based upon [an] alleged delay in receiving heart medication, his claim would be without merit because delay in medical care, with no resulting injury, does not violate the Eighth Amendment.] (citing Stickler v. Waters, 939 F.2d 1375, 1380-1381 (4th Cir. 1993); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances].

Finally, with respect to Plaintiff's complaint that one or more of the named Defendants

---

⁶(...continued)
Plaintiff has failed to file a response to the Defendants' motions for summary judgment, the undersigned has considered the factual allegations of the Complaint and Plaintiff's attached exhibits in issuing a ruling on Defendants motions.



failed to process, or allow him to access, the jail grievance procedure or forms, it is well settled that jail inmates have no federal constitutional right to even have an inmate grievance system in operation at the place where they are incarcerated. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see also Smith v. Ray, 36 F. App'x 99 (4th Cir. 2002) ["[A]ccess to the grievance procedure is not a constitutionally protected right[.]"]. Simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer a substantive constitutional right on prison inmates. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). As such, the Defendants' failure to provide Plaintiff with access to the jail grievance process, assuming this claim to be true for purposes of summary judgment, does not by itself provide Plaintiff with a constitutional claim. He has not been prohibited from filing this lawsuit, nor is his lawsuit being dismissed on the basis of any purported failure to exhaust his grievance remedies. Therefore, this claim is without merit. Oliver v. Myers, No. 7:08–CV–558, 2008 WL 5212409, at *4 (W.D.Va. Dec. 12, 2008) [stating that "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts"], appeal dismissed, 335 F. App'x 317 (4th Cir. 2009); see also Spencer v. Moore, 638 F. Supp. 315, 316 (E.D.Mo. 1986).

In sum, the Defendants are entitled to summary judgment on Plaintiff's claims. Further, as this entitlement to summary judgment encompasses Plaintiff's claims made against the Defendant Clark, his separately filed Rule 12 motion to dismiss is **moot**.

### Conclusion

Based on the foregoing it is recommended that the Defendant Clark's motion to set aside default (Court Docket No. 27) be **granted**, that Plaintiff's motion for entry of a default



14

judgment (Court Docket No. 25) against Clark be **denied**, that the pending motions for summary judgment filed by the Defendants (Court Docket Nos. 28 and 31) be **granted**, that the separately filed motion to dismiss for lack of jurisdiction filed by the Defendant Clark (Court Docket No. 34) be deemed **moot**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 31, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



16